## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PHILIP R. PURDY,
260 Fox Run
Exton, Pennsylvania 19341,

          Plaintiff,

      v.

WE BUY EVERYTHING ENTERPRISES, LLC
17 Baycrest Drive
Margate, New Jersey 08402

          and

PAWN OUTLET WILMINGTON, LLC
4524 Kirkwood Hwy, Suite B
Wilmington, Delaware 19808

          and

JOHN SHIELDS
4524 Kirkwood Hwy, Suite B
Wilmington, Delaware 19808

          and

JOHN DOES #1-100

          Defendants.

No.

Jury Trial Demanded

## **COMPLAINT**

Plaintiff, Philip Purdy ("Purdy"), by and through his attorneys, hereby files this Complaint against Defendants, We Buy Everything Enterprises, LLC ("WeBuyEverything"), Pawn Outlet Wilmington, LLC ("Wilmington Location"), John Shields ("Shields") and John Does #1-100, and in support thereof, avers as follows:

#2187095v1

- 2 -

**I.      Preliminary Statement**

1.      This case involves the purchase of known stolen items, and the concealment of those items by an organization that controls various pawnshops in the tristate area and its employees.

**2.**      The Defendants' concerted and repeated efforts to purchase, receive and subsequently sell or dispose of known stolen property, failure to fill out legally required paperwork for tracking such purchases, and efforts to impede and/or obstruct victims of theft in recovery of their stolen items implicates the Racketeer Influenced and Corrupt Organizations Act ("RICO") pursuant to 18 U.S.C. §1964.

**3.**      Purdy, as the victim of Defendants' collective actions seeks compensatory damages, treble damages, attorney's fees, punitive damages and all other available relief permitted by the RICO act and applicable state law.

**II.      Parties**

4.      Purdy is an adult individual who resides at 260 Fox Run, Exton, Pennsylvania 19341.

5.      WeBuyEverything is a limited liability company organized under the laws of the State of New Jersey with a registered address of 17 Baycrest Drive, Margate, New Jersey 08402.

6.      WeBuyEverything, upon information and belief owns the trademark, and operates under the trade name "We Buy Everything."

7.      WeBuyEverything operates a number of pawnshops in Pennsylvania, New Jersey and Delaware, including the Wilmington Store, which upon information and belief are separate legal entities.

- 3 -

8. The Wilmington Store is a limited liability company with a principal place of business at 4524 Kirkwood Hwy, Wilmington, Delaware, 19808.

9. The Wilmington Store operates as one of WeBuyEverything's pawnshops in the tristate area and buys and sells goods with consumers.

10. Shields is an adult individual who is employed at the Wilmington Store as a manager.

### III. Jurisdiction & Venue

11. Jurisdiction over the federal claim for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") is invoked pursuant to 18 U.S.C. §1964.

12. Jurisdiction over the state claims are appropriate pursuant to 28 U.S.C. §1367 because those claims are related to the RICO action and form part of the same controversy under Article III of the United States Constitution.

13. This action properly lies in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391 because: (a) the events giving rise to Purdy's claims arose in this judicial district; and (b) WeBuyEverything regularly conducts business, and in fact, has two pawnshop locations in the Eastern District of Pennsylvania, (c) the Wilmington Store and Shields regularly conduct business with Pennsylvania residents, and in particular purchased the items in this matter from a person they believed to be an Eastern District resident.

### IV. Facts

14. Between March 22, 2024 and March 23, 2024 a storage locker rented by Purdy and located at 371 Gordon Drive, Exton, Pennsylvania 19341 (the "Storage Locker") was burglarized by Harry and Bradley Miller.

15. Many items of value were stolen from the Storage Locker including a rare Jimi Hendrix *Are You Experienced* Album that was autographed by the late Jimi Hendrix, Noel Redding and Mitch Mitchell (the "Album").

16. The Album held significant nostalgic and monetary value to Purdy, as he procured the signatures himself after attending a Jimi Hendrix Experience concert.

17. Hendrix died shortly thereafter making the signed Album a valuable collectible.

18. A signed *Are You Experienced* album cover containing all three signatures (not including the vinyl record itself) sold for thirty thousand dollars ($30,000.00) at auction in September of 2023.

19. The condition and completeness of the Album would likely generate a significantly higher auction price closer to six figures in total.

20. On March 23, 2024, Harry Miller transported the Album (and other items stolen from the Storage Locker) across state lines to the Wilmington Store for the purpose of selling them.

21. Harry Miller met with Shields at the Wilmington Location.

22. Upon information and belief, Shields turned away a number of items that Harry Miller was attempting to sell as he did not deem them trustworthy or legally owned by Harry Miller.

23. The Album was also purchased with accompanying certification paperwork addressed to Purdy, which further indicated Harry Miller was not the lawful owner.

24. However, Shields did elect to purchase the Album and paid two thousand dollars ($2,000.00) to Harry Miller to purchase the Album.

- 5 -

25. Upon information and belief, Harry Miller used a Pennsylvania Driver's License to complete the transaction, which Shields documented.

26. Upon information and belief Shields used cash from his own pocket to complete the transaction.

27. Purdy discovered the burglary on April 7, 2024 upon arriving at the Storage Locker and noticing the padlock had been cut.

28. The contents of the storage locker were shuffled and it was clear that items were missing.

29. Purdy contacted the Uwchlan Township (Pa.) Police Department and a criminal investigation was opened by Sergeant James Hall ("Sgt. Hall").

30. Purdy began contacting different music shops and other related entities to see if they had knowledge of where the record had been taken.

31. On April 12, 2024, the Instagram page associated with WeBuyEverything called "webuyeverythingpawnshop" posted the following:

> Signed Jimi Hendrix experience album with certifications seen at our Wilmington Delaware location!  Don't miss the new big find and check out one of our stores!

The Instagram post also included photos of the Album and referenced the certifications that were addressed to Purdy.

32. On April 14, 2024, one of the music shops that Purdy contacted sent him a text message of the Instagram post by WeBuyEverything.

33. On April 15, 2024, after being provided this information from Purdy, Sgt. Hall and a liaison officer from the jurisdiction where the Wilmington Store is located arrived at the Wilmington Store.

34. Sgt. Hall was informed by an unidentified pawnshop employee that the Album had already been sent to auction.

35. Sgt Hall was advised to direct further questions to Gregg DeSouza, the attorney for WeBuyEverything.

36. Sgt. Hall contacted DeSouza via telephone to discuss the Album.

37. DeSouza advised Sgt. Hall that WeBuyEverything would no longer be involved or assist in the criminal investigation.

38. Sgt. Hall was able to determine the suspects of the theft to be Harry and Bradley Miller, who were subsequently arrested and charged criminally with burglary and related offenses on July 10, 2024.

39. Harry and Bradley Miller are currently pending criminal trial in the Chester County Court of Common Pleas.

40. On January 29, 2025, an agent of Purdy spoke with Shields about the Album.

41. During this conversation, Shields communicated that the Album was not actually sold at an auction but through WeBuyEverything.

42. Shields stated he did not personally know who purchased the Album.

43. Upon information and belief, WeBuyEverything and the Wilmington Store uses eBay.com as one of their primary source of auctions.

44. A review of previously auctioned sales reveal the Album was not sold on eBay or any other publically available auction houses.

45. Upon further information and belief, Shields, the author of the Instagram Post and/or yet to be identified employees or agents of WeBuyEverything and/or the Wilmington location concealed the location, sale or other disposition of the Album from the police.1

46. Pursuant to 24 Del. C. §2301, *et seq*. (the "Delaware Pawn Code"), which governs pawnbrokers, a pawnbroker is required to maintain records of all transactions and can face misdemeanor penalties if they fail to abide by those requirements.

47. Upon information and belief, records of sale for federal and income tax purposes would exist if the Album was in fact sold.

48. Upon information and belief, Shields oversees the books as manager of the Wilmington Store and would know if the Album was sold.

49. Failure to document an item of significant sale value, such as the Album would shirk state and federal tax laws.

50. Upon information and belief, and based on Shield's statements on January 29, 2025, the sale of the Album was not documented as income in violation of Federal and State income tax laws.

51. Defendants' failure to maintain such records is a predicate crime and part of a scheme of criminal activity in violation of RICO.

52. Upon information and belief WeBuyEverything and/or the Wilmington Store and its employees including Shields, the author of the Instagram post, and other yet unidentified employees or agents know the whereabouts of the Album.

53. The Delaware Code explicitly provides a safe harbor for pawnbrokers to seize stolen property and notify the police *without fear of prosecution*. 24 Del. C. §2306.

---

1 Purdy reserves the right to amend the Complaint upon discovery of further involvement from yet unidentified co-conspirators.

- 7 -

#2187095v1

54. Instead of seizing a known stolen Album with certifying documentation that belonged to a person other than Harry Miller, the Defendants, collectively conspired to aid and abet in the crimes of receiving stolen property, disposing/selling stolen items, violating the Delaware Pawn Code, Federal and State Tax laws, and continue to do so, as part of a scheme of criminal activity in violation of RICO .

## V.     Causes of Action

### Count I:  Violation of the RICO Act, 18 U.S.C. §1391, *et seq*.

55. Purdy incorporates by reference the averments contained in Paragraphs 1 through 47 as if set forth fully herein.

56. Defendants' conduct constitutes an enterprise affecting interstate commerce, as defined by 18 U.S.C. § 1961(4).

57. Defendants' actions involved multiple predicate acts of racketeering activity in violation of 18 U.S.C. § 1961(1), including but not limited to:

    a.  the knowing purchase of stolen goods including the Album;

    b.  the advertisement of sale of stolen goods including the Album;

    c.  transfer/sale of stolen goods;

    d.  failure to properly log or document the sale of the Album in accordance with the Delaware Code;

    e.  failure to properly record income in accordance with the Internal Revenue Service Code;

    f.  failure to properly record income of the Album in accordance with Delaware State law;, transfer or sale and concealment of stolen consumer goods in violation of 18 U.S.C. § 1961(1).

58. Defendants knowingly purchased stolen items that traveled through interstate commerce as evidenced by Harry Miller's Pennsylvania Driver's License.

59. Upon information and belief, WeBuyEverything and the Wilmington Location were known to the Millers as a place where they could sell a valuable and clearly stolen Album.

60. The Millers drove over state lines to sell the Album and other stolen goods instead of using a closer pawnshop.

61. As a direct and proximate result of the Defendants' racketeering activities, Plaintiff has suffered damages, including but not limited to the loss of property.

## Count 2: Civil Conspiracy

62. Purdy incorporates by reference the averments contained in Paragraphs 1 through 60 as if set forth fully herein.

63. Defendants acted in concert to purchase and sell the stolen Album given its high value.

64. The Defendants took overt acts in furtherance of the conspiracy by purchasing the album and transferring or selling to another person and shielding that information from law enforcement and Purdy.

65. As a direct and proximate result of the Defendants' actions, Plaintiff has suffered damages, including but not limited to the loss of property.

## Count 3: Unjust Enrichment

66. Purdy incorporates by reference the averments contained in Paragraphs 1 through 64 as if set forth fully herein.

67. Defendants purchased the Album at significantly less than its market value.

68. Defendants sold or retained and upon information and belief either collected a large profit or retained the value of the Album.

69. Defendants knew that the album was stolen and deprived the owner of that album the benefit of its value.

70. Defendants have received and retained the benefit in the value or profits of the Album under circumstances which make it unfair and inequitable for them to retain such benefit, to the detriment of Plaintiff..

### Count 4: Conversion

71. Purdy incorporates by reference the averments contained in Paragraphs 1 through 69 as if set forth fully herein.

72. Defendants intended to purchase the Album at significantly less than its purported value and did in fact purchase the Album.

73. The Album is personal property of Purdy.

74. Defendants sold or retained and upon information and belief either collected a large profit or retained the value of the album.

75. Defendants wrongfully assumed control, dominion and ownership of the Album without Purdy's consent.

76. Defendants deprived Purdy of possession and valuable information regarding the whereabouts of the Album.

**VI.  Jury Demand**

Purdy demands trial by jury on all claims and issues triable by a jury.

**VII.  Prayer for Relief**

WHEREFORE, Purdy respectfully requests that this Honorable Court:

- 10 -

(a) enjoin Defendants from engaging in such unlawful conduct in the future;

(b) Order and Direct that Defendants return the Album to Purdy if it still remains in their possession or control;

(c) Order and Compel the Defendants to state the last known location of the Album if it was transferred from their possession or control;

(d) award Purdy all compensatory damages and other statutorily-permitted and other damages including treble and punitive damages;

(e) award Purdy his attorneys' fees and costs; and

(f) grant such other relief as it may deem just and proper.

Respectfully submitted,

UNRUH, TURNER, BURKE & FREES

Date: May 16, 2025          By: _____
James C. Dalton
Daniel J. Yarnall
Attorney I.D. No. 326169

## **VERIFICATION**

The undersigned, Plaintiff in this matter that is represented by counsel, makes this verification being duly authorized to do so. Counsel has been furnished with factual information upon which the Complaint filed in this matter is based. To the extent that the contents of the Complaint are based on the factual information provided to counsel, I verify that the facts are true and correct to the best of my knowledge, information and belief. However, the language of the Complaint is that of counsel and, to the extent that the language goes beyond the factual information provided to counsel, I have relied upon counsel in making this verification.

I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. §4904, relating to unsworn falsification to authorities.

Date: 5.15.25        By: _____
                         PHILIP R. PURDY

#2187998v1